UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ELIZABETH PEULER                                    CIVIL ACTION

VERSUS                                              NUMBER:  14-0247

SALLY JEWELL, SECRETARY,                            SECTION:  "N"(5)
COMPLAINT DEPARTMENT OF
THE INTERIOR (BSEE)

**<u>ORDER AND REASONS</u>**

Before the Court is the motion for summary judgment filed by Defendant, the United

States of America on behalf of the Federal Defendant, Sally Jewell, Secretary, Department of

the Interior (the "Government").  (Rec. doc. 28).  Plaintiff, Elizabeth Peuler ("Plaintiff"),

responded initially by filing a motion for leave to file excess pages (rec. doc. 37), which was

granted by the Court.  (Rec. doc. 39).  The opposition memorandum subsequently filed into

the record was some 32 pages long and was accompanied by an astonishing 1,200 pages of

exhibits, many of which were duplicative, cumulative, mis-numbered and unexplained and

almost all of which were generally incomprehensible.  (Rec. doc. 40).  Owing to its massive

size and general unwieldiness, this pleading was stricken from the record by the Court, with

instructions that Plaintiff's counsel re-file the opposition memorandum, limited to 25 pages,

in a more concise format that would fairly respond to the specific arguments raised by

Defendant's motion, and with sequentially numbered exhibits.  (Rec. doc. 44).

Plaintiff responded with an opposition that, while still very difficult to negotiate,

generally complied with the Court's directive.  (Rec. doc. 45).  The Government filed a reply

memorandum (rec. doc. 49) and the Court held oral argument on June 1, 2016 (rec. docs. 51

(minute entry) and 52 (transcript)).  Because Plaintiff's counsel cited new authority for the

first time at the hearing, the Court allowed the Government to file a response, which it did. (Rec. doc. 55).  Despite being specifically directed that no additional pleadings would be accepted into the record (rec. doc. 54), Plaintiff nonetheless sought leave to file a sur-reply. (Rec. doc. 56).  That motion was denied.  (Rec. doc. 57).

The Court has considered all the pleadings, exhibits, authorities cited by both parties and the argument of counsel and rules on the motion as follows.

## I.     BACKGROUND

Plaintiff is a Program Analyst, GS-343-14, in the Office of the Regional Director ("ORD"), Gulf of Mexico OCS Region ("GOMR"), Bureau of Ocean Energy Management ("BOEM"), United States Department of the Interior ("DOI") located in New Orleans, LA.  (Rec. doc. 1).[1]  She was over the age of 40 throughout the entire relevant time period.  (*Id.*)

During the relevant time period, Plaintiff served as the Section Chief of the Plans Section ("Plans"), which was one of five sections within the Office of Leasing & Plans ("L&P"), in the GOMR.  (*Id.* at p. 2).  While working as a Supervisory Physical Scientist in the Leasing and Plans Section from October 9, 2011 through June 13, 2013, Plaintiff was supervised by Robert Sebastian ("Sebastian"), who is and was a male over 40 throughout the relevant time period.  (Rec. docs. 28-4 (Declaration of Laura Berg, Supervisory Human Resources Specialist and/or Acting Human Resources Officer); 45-1 at p. 4).

Following the catastrophic Deepwater Horizon Oil Spill in 2010 ("Oil Spill"), a re-organization occurred within Minerals Management Service ("MMS"), in which MMS was

---

[1]  This statement of fact, set forth in the Government's Statement of Undisputed Facts (rec. doc. 28-2) was, for reasons escaping explanation, "DENIED AS WRITTEN" in Plaintiff's Response to the Government's Statement of Undisputed Facts (rec. doc. 45-1), despite the fact that the verbiage was quoted <u>directly</u> from Plaintiff's own complaint.  This inexplicable anomaly is typical of numerous maladies infecting Plaintiff's entire submission.

essentially split into two separate entities – the Bureau of Safety and Environmental Enforcement ("BSEE") and BOEM.  (Rec. doc. 28-6 at pp. 16-18; rec. doc. 28-7, Jean Rumney Affidavit).

Plaintiff sought EEOC counseling on December 12, 2012, complaining of disparate treatment and hostile work environment in connection with: (1) her inability to fully staff and properly supervise her section, (2) not being selected for the position of Deputy Regional Director, (3) being charged with AWOL, and (4) other matters.  (Rec. doc. 1).   She subsequently filed a formal complaint with the EEOC on May 3, 2013.  (*Id.*).

After the Oil Spill, BOEM and BSEE grew significantly as a result of the aforementioned re-organization, and a large volume of positions needed to be filled.  (Rec. doc. 28-6 at p. 17, deposition of Elizabeth Peuler ("Peuler depo.") at p. 66).   Throughout Plaintiff's time as Section Chief, BOEM was working to fill approximately 70 positions, and was experiencing difficulty doing so quickly.  (*Id.*; rec. doc. 28-7).   During this same period, Plaintiff claims her section's "priority status was still ignored by management in retaliation for Claimant's EEO activity and/or gender and/or disparate treatment and/or [hostile work environment] since it was contrary to how similarly situated males were treated. . . ."  (Rec. doc. 45-1 at p. 6).  As of August 2011, Plaintiff had the capacity to accommodate 10 engineers and staff in her section, but only had five on staff.  (Rec. doc. 28-6 at p. 21 (Peuler depo.)).  However, by June 2013, she had hired four engineers and a secretary, bringing her section to its 10-person capacity.  (*Id.*).  While Plaintiff does not deny these facts, she complains about the delay in hiring:  "[n]ew hires experience considerable lag time prior to becoming productive functional plan processors.  Delays in hiring are felt for some time after hires were on board.

Therefore, the delay still had a negative effect on Claimant's ability to run her section." (*Id.* at p. 9).

Effective June 16, 2013, Plaintiff made a lateral move, which she has termed a "directed reassignment," to a Program Analyst position, continuing as a GS-14 but without the managerial duties she previously had, and working under the Supervision of Michele Daigle. (Rec. docs. 28-4 at p. 2; 45-1 at p. 4). At the time of her reassignment, the Regional Director of BOEM explained the reasoning for Plaintiff's transfer in a letter to her, dated June 12, 2013:

> The workload for the Senior Advisor position in the Office of the Regional Director has been increasing and requires a support position. For this reason, an additional position has been created to provide such support. I believe you possess the necessary skills and knowledge for this position. For example, an immediate duty in this position will be to serve as a lead advisor in the development of business and software requirements associated with our ePlans initiative. Given your past experience in the Plans Section, as well as you being a longtime proponent for such an electronic plans system, you will be a very valuable person to the Bureau of Ocean Energy Management (BOEM) Gulf of Mexico Region (GOMR) for the task at hand.

(Rec. doc. 49-1).

Plaintiff claims that this reassignment and "stripping" of her managerial responsibilities was discriminatory and retaliatory in that it affected the terms and conditions of her employment. (*See, e.g.*, rec. doc. 45-1 at pp. 4-5). However, it is undisputed that during the relevant time period from August 2011 to the present, Plaintiff was not demoted in GS level. (Rec. doc. 45-1 at p. 5).

Following Plaintiff's reassignment, Robert Sebastian was also removed from management and re-assigned to a non-management position in February 2014.  (rec. doc. 45-1 at p. 4).

## II.   ANALYSIS

To say that Plaintiff's submissions lack clarity is an understatement.  The same is true of her original Complaint, which the Court has parsed closely in an effort to divine her claims and the bases therefor.  Attempting to reconcile Plaintiff's complaint against her unwieldy summary judgment pleadings and the hundreds of pages of attached exhibits filed in response to the Government's motion for summary judgment has proven a daunting task for the Court, <u>even after</u> her original 1,200-plus page original response was stricken as being "largely incomprehensible."  (Rec. doc. 44).

Having reviewed the entire record closely, and having considered the arguments of counsel (including Plaintiff's counsel's citation to three "on point" cases for the first time at the hearing), it is clear that the Government's motion for summary judgment is well-taken and should be granted.

### A.  Plaintiff's Complaint

In her Complaint, Plaintiff cites Title VII, 42 U.S.C. §2000e ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA") as the statutory bases for her claims.  (Rec. doc. 1).  She alleges that, beginning in August 2010, she has been subjected to "disparate treatment and a hostile work environment," which formed the basis of an EEOC complaint brought by her in May 2013.  (*Id.*, rec. doc. 45 at p. 1).  Subsequent to, and apparently because of, that complaint, she also alleges retaliation by her employer.  (*Id.*).

5

The retaliation, discrimination and hostile work environment of which Plaintiff complains allegedly manifested themselves in the following non-exclusive particulars, as set forth in the Complaint:

    a.   Complainant was harassed while Plans Section Chief after October 2011 when her full staffing level of ten was kept to only five employees, despite the workload that justified a full staff.

    b.   no matter how Claimant tried to persuade senior management of her need, her section was not regarded as a priority and the performance ratings of herself and everyone on her staff suffered due to their difficulty in meeting statutory deadlines on the work.

    c.   Claimant's immediate supervisor, Robert Sebastian, gave no reasons for not filling the vacancies.

. . .

[S]he has been subjected to a hostile work environment, for example:

a. withholding staff hirings,

b. QSls (Quality Step Increases),

c. promotions,

d. overtime, compensatory time and credit hours;

e. changing seating assignments;

d. creation of additional offenses;

e. leave documentation;

f. demoralizing remarks regarding establishment of performance plan;

g. and, shouted at in a meeting then instructed to stand down

> h. other acts that will be shown at trial
>
> Around November 2012, she was not referred by Human Resources to the selecting official for filling the position of Deputy Regional Director, vacancy announcements BOEM-SL-12-MM590487 (DEU) and BOEM-SL-12- MM590488 (MP).
>
> (Rec. doc. 1).

At the hearing on Defendant's motion, counsel confirmed that the "non-selection" claim had been abandoned by Plaintiff.  (Rec. doc. 52 at p. 2).  However, while not pleaded in the Complaint, Plaintiff introduced a new theory in her opposition to the motion for summary judgment:  that she was given a lateral transition and "stripped of her management duties" in "reprisal" for lodging her EEOC complaint.  (Rec. doc. 45 at pp. 18-19).

### B.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  The substantive law identifies the facts in a case that are "material."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  Only disputes about those facts will preclude the granting of summary judgment.  *Id.*  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.  If the moving party meets its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  The non-movant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions or only a scintilla of evidence." *Warfield v. Bryon*, 436 F.3d 551, 557 (5th Cir. 2006)(quoting *Freeman v. Texas Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)).

### 1.   *Plaintiff's Discrimination Claims*

Plaintiff's discrimination claims fall under two different federal statutes.  Plaintiff's claims of gender discrimination arise under Title VII of the Civil Rights Act of 1964.  Title VII forbids an employer from discriminating against an employee because of the "individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a).  Plaintiff's claim of age discrimination arises under the Age Discrimination in Employment Act of 1967.  The ADEA prohibits "arbitrary age discrimination in employment." 29 U.S.C. §621.  Under both statutes, the Fifth Circuit applies the same general framework to discrimination claims.  *See EEOC v. Chevron Phillips*, 570 F.3d 606, 615 & n. 6 (5th Cir. 2009).[2]

Discrimination may be proven through direct or circumstantial evidence but where, as here, a plaintiff must rely on circumstantial evidence of discrimination,[3] the *McDonnell*

---

[2]  This framework has been modified somewhat by the United States Supreme Court in age-discrimination cases, but that difference is ultimately not germane to the determination of any issue in this case.  In age discriminations cases under the ADEA, the plaintiff retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action.  *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177, 129 S.Ct. 2343, 2351 (2009).  A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision.  *Id.*

[3]  "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face."  *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994).  Plaintiff has produced no such evidence in this case.

*Douglas* three-stage burden-shifting framework applies to her claims. *See, e.g.*, *Cardiel v. Apache Corp.*, 559 Fed. Appx. 284, 288 (5th Cir. 2014). As the Fifth Circuit explains:

> Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff . . . .
>
> *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (internal citations and quotations omitted).

Once the burden has shifted back to the plaintiff, Title VII requires the plaintiff to show "either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado*, 492 F.3d at 611.

To establish a prima facie case of discrimination under Title VII, Plaintiff must show that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she was subject to an adverse employment action and (4) that other similarly situated employees were treated more favorably. *See St. Cyr v. Napolitano*, No. 10-CV-208, 2011 WL 4964104 at *9 (W.D. Tex. Oct. 18, 2011)(citing *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004)).

There is no dispute here that Plaintiff is a member of a protected class or classes (female over 40) and is qualified for her position. Therefore, the Court turns to the questions

whether she was subject to an adverse employment action and whether other similarly situated employees were treated more favorably.

The term, "adverse employment action" is a judicially-coined term referring to an employment decision that affects the terms and conditions of employment. *See, e.g., Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 126 S.Ct. 2405, 2411-12 (2006) (explaining that the language of Title VII's antidiscrimination provision "explicitly limit[s] the scope of that provision to actions that affect employment or alter the conditions of the workplace").

"The Fifth Circuit has a "strict interpretation of the adverse employment element." *Pegram*, 361 F.3d at 282. For Title VII discrimination claims, the Fifth Circuit has held that "adverse employment actions include only 'ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007); *see also Alvarado*, 492 F.3d at 612. "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram*, 361 F.3d at 282 (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.) *cert. denied sub nom.* 540 U.S. 817, 124 S.Ct. 82 (2003)).

With these notions in mind, the Court finds that, with a single possible exception, Plaintiff has failed to produce evidence of an adverse employment action. The problems of which she complains are simply not actionable under Fifth Circuit precedent.

In support of her discrimination claims, Plaintiff complains of such slights on the part of her employer as failing to hire sufficient staff, withholding QSIs and promotions from her staff, changing her seating assignments, marking her AWOL (which was later rescinded),

demoralizing remarks and being shouted at during a meeting.   (Rec. doc. 1). Notwithstanding that some of these complaints are likely not actionable by <u>her</u> at all (failing to promote her staff, for instance), it is abundantly clear that, even taken together,[4] these actions do not rise to the level of adverse employment actions.  *See Pegram*, 361 F.3d at 282; *St. Cyr,* 2011 WL 4964104 at *9 (collecting cases holding that more serious offenses do not rise to the level of adverse employment actions).

For instance, one of Plaintiff's linchpin arguments is that she was discriminated against due to her "inability to fully staff" her section, which she attributes to BOEM "withholding staff hirings."  (Rec. doc. 1 at p. 3).  But the record reflects that Plaintiff was allowed to and actually did hire a full complement of engineers and staff prior to her reassignment. (Rec. doc. 28-6 at p. 21 (Peuler depo.)).  When confronted with this fact in the Government's summary judgment pleadings, Plaintiff, through counsel, explained that "[n]ew hires experience considerable lag time prior to becoming productive functional plan processors.  Delays in hiring are felt for some time after hires were on board.  Therefore, the delay still had a negative effect on Claimant's ability to run her section." (*Id.* at p. 9).  This Court is aware of no authority in this Circuit or any other that would support a finding that a "delay" in hiring staff such as the one described by these facts could ever be considered an adverse employment action.

As noted above, however, there is one possible complaint that could rise to the level of stating a claim of adverse employment action – the "stripping" of Plaintiff's supervisory

---

[4]  At the hearing on Defendant's motion, counsel alluded to a "thousand cuts" theory, likely to argue that all of these slights, <u>taken together</u>, could be viewed as an adverse employment action.  (Rec. doc. 52 at p. 11: "[t]his is part of the thousand cuts theory, and there are lots of cases on the thousand cuts theory.").  While there may be "lots" of such cases, none have been cited in this matter and the Court is not convinced that had they been, there is sufficient evidence to support such a theory.

responsibilities.  Notably, while it is the only claim this Court can envision even possibly passing muster under Fifth Circuit precedent, it was not pleaded in Plaintiff's Complaint. Rather, it was mentioned for the first time in response to the Government's motion for summary judgment.  Even there, it was buried in an obscure reference on page 19 of 25 and supported with no citations whatsoever to any case law.  Instead, for the first time at any point in the case, counsel cited three cases at the hearing (which the Court for obvious reasons did not have readily available to review), stating that they were "on point" with the facts of this case and that they supported the eleventh-hour argument that the Plaintiff's lateral reassignment and "stripping" of managerial duties amounted to an adverse employment action.  (Rec. doc. 52 at p. 8).

Having now reviewed the three cases cited by counsel, the Court finds they are neither on-point nor otherwise convincing authority in _this_ case for the argument that the Plaintiff's loss of managerial responsibilities was an adverse employment action.

At the outset, the Court notes that it posed a specific question of counsel at the hearing concerning what, exactly, these cases would show once the Court reviewed them:

> THE COURT: What do all these cases say, since I don't have any of them?  They weren't cited to me.  So, obviously, I haven't read them.  So, tell me what they say.

> MR. LAWRENCE: They say that if you take a <u>federal employee</u> and even though it's a lateral move and he doesn't lose grade or pay, if he loses his managerial responsibilities and his managerial supervisory duties, <u>that is an adverse action</u> because that affects his ability to move forward in where he goes from there and what his options are.  <u>Those cases are on point that that's an adverse action</u>.

> (_Id._ at p. 8)(emphasis added).

This explanation gibes with counsel's argument – made with no factual support at all – that loss of supervisory functions is "career death in the federal government."  (*Id.* at p. 3).  Unfortunately for Plaintiff, the cases cited by counsel do not stand for that proposition.

The first case has nothing whatsoever to say about the issues in this case.  *Equal Employment Opportunity Commission v. Brookhaven Bank & Trust* is a 1980 decision that concerns an appeal by the EEOC in a class action brought by it against an employer.[5]  Multiple readings of this case fail to disclose any connection between it and the issues now before this Court.  It is unpersuasive as to any argument being advanced here.

The decision of the D.C. Circuit in *Czekalski v. Peters* is likewise unpersuasive.[6]  First, while it does concern a federal employee being stripped of managerial duties, it does not discuss whether that action would be considered an adverse action under Fifth Circuit's "strict interpretation of the adverse employment element."  *Pegram*, 361 F.3d at 281-82.  Moreover, the case does not hold that such a reassignment <u>is</u> an adverse action, only that it <u>could be</u> one.

The third case cited by counsel, *Thompson v. City of Waco, Texas,* does not involve the claims of a <u>federal</u> employee at all, but rather concerns the claims of a police detective employed by the City of Waco.[7]  Moreover, there is nothing in that case to suggest that the detective was stripped of managerial responsibilities, which is the sole basis of Plaintiff's claim here.  Rather, that detective's employer imposed restrictions on him, including that he could not search for evidence without supervision, log evidence, work undercover, be an affiant in a criminal case, be the evidence officer at a crime scene, or be a lead investigator

---

[5]  614 F.2d 1022 (5th Cir. 1980).
[6]  475 F.3d 360 (D.C. Cir. 2007).
[7]  764 F.3d 500 (5th Cir. 2014).

on an investigation.  *Id.*  There is no mention of loss of supervisory responsibilities.  And in any event, the Fifth Circuit held in that case only that the detective had alleged such profound changes in job responsibilities that he claimed to have "lost the essential job functions of a detective, he no longer uses his education and skills that he had acquired and regularly used as a detective, and his new position is less interesting, provides fewer opportunities for advancement, is less prestigious, and involves significantly diminished responsibilities."  *Id.* at 505.  Consequently, the Court held that he stated "a plausible claim that he was subject to the equivalent of a demotion" and, as a result, had "plausibly allege[d] an adverse employment action."  *Id.* at 506 (emphasis added).

The facts of the *Thompson* case do not convince this Court that Plaintiff has made a plausible claim that she was subject to an adverse employment action.  The changes to her duties that resulted from her reassignment, one of which involved the loss of supervisory responsibilities, do not approach the level of those at issue in *Thompson* and Plaintiff here has pointed to no facts at all to suggest otherwise.  Her conclusory statements to that effect and last-minute citation to inapposite cases do not change that analysis.  Her reassignment was not an adverse employment action and Plaintiff has therefore failed to establish a prima facie case of discrimination based upon it.

And, even if she could somehow establish that her reassignment was an adverse employment action, she still falls short of making out a prima facie case because she cannot demonstrate that that other similarly situated employees were treated more favorably than she was as to her reassignment.  *See Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 361 (5th Cir. 2004).

In her opposition and through counsel at oral argument, Plaintiff identified two "comparators" for purposes of establishing a prima facie case of discrimination. They are two male co-employees, Carol Williams ("Williams") and Leonard Coates ("Coates"). In cases such as this, it is the plaintiff-employee's burden to show "nearly identical" circumstances for employees to be considered similarly situated or "comparators." *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004), *cert. denied*, 546 U.S. 976, 126 S.Ct. 545 (2005). Plaintiff has not done so here.

As to their respective responsibilities within the Office of Leasing and Plans, Plaintiff offers nothing to support the notion that she and her two comparators had similar responsibilities. She has merely argued in conclusory fashion that because the three were in the same overall Office of Leasing and Plans and, for a period of time, shared the same supervisor, they all worked under "nearly identical" circumstances. On the other hand, the record reflects that, during the relevant time period, Plaintiff was the Plans Section Chief and a Supervisory Physical Scientist, while Coates was a Supervisory Geographer and Williams was a Supervisory Mineral Leasing Specialist. Plaintiff offers nothing to support that either Coates or Williams were performing plans work similar to Plaintiff in their respective roles within the agency.[8]

Moreover, Plaintiff testified that Mr. Sebastian, the supervisor she believed discriminated against her on the basis of age and gender (and who the record reflects is eight years older than Plaintiff), supervised two other females along with Plaintiff and her two alleged comparators – Ann Glazner and Sue Hooper. Plaintiff testified that Ann Glazner,

---

[8] As will be seen, given BOEM's stated explanation for reassigning Plaintiff, this failure of proof is particularly damaging to her claim.

another female over forty (40), was supervised by Mr. Sebastian during the relevant time period and seemed to work well with Mr. Sebastian. (Rec. doc. 28-6, 100:6-17). Plaintiff also testified that while she was not sure of Hooper's age, it was a close call as to whether she was 40, and Plaintiff was unable to offer any testimony that Hooper encountered any challenges with Mr. Sebastian. (*Id.* at 153:15-24; 154:1-25; 155:1-2). The fact that Sebastian, who was over 50 at the relevant time, supervised two females in addition to Plaintiff during that time period, neither of whom encountered any issues working with Mr. Sebastian, directly contradicts Plaintiff's assertion of disparate treatment based on both gender and age.

Finally, even if Plaintiff had made a prima facie case of gender or age discrimination,[9] the Government has produced a legitimate, nondiscriminatory reason for its reassignment of Plaintiff, as set forth in the correspondence to her from John Rodi[10] dated June 12, 2013 that was quoted in full earlier. (*See* p. 4, *infra*). It is important to recall that the burden on the employer at this stage is one of production, not persuasion and can involve no credibility assessment. The Government has met that burden. *Alvarado*, 492 F.3d at 611. Thus, to withstand summary judgment, Plaintiff is required to show a genuine issue of material fact as to whether the Government's explanation is pretextual. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 (6th Cir. 2007).

To raise an inference of pretext in the face of an employer's non-discriminatory explanation, a plaintiff "must produce substantial evidence of pretext." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001). Pretext may be established "by showing

---

[9] Given that it appears that every single person identified by name in the pleadings filed by Plaintiff is over 40 and most are older than she is, there is no evidence of age bias whatsoever. It is worth noting again here that there is no reference to any evidence anywhere in the record of actual gender- or age-based discriminatory animus on the part of any person vis-à-vis Plaintiff.

[10] Mr. Rodi's name appears nowhere in the Complaint as an alleged discriminator or retaliator.

that a discriminatory motive more likely motivated [an] employer's decision, such as through evidence of disparate treatment, or that [the employer's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078, 122 S.Ct. 1961 (2002)(internal quotations and citations omitted). To show the latter, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S.Ct. 1195, 1197 (2006)(quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

It is simply not possible for Plaintiff to demonstrate pretext in this case. First, she has offered no direct or even circumstantial evidence of discriminatory or retaliatory animus on the part of any supervisor identified by her in the case. All she has offered are conclusory statements that she was discriminated and retaliated against. When asked directly in her deposition <u>why</u> she thought her supervisor, Mr. Sebastian, discriminated and retaliated against her, she mustered only the following explanation:

> ...the essence of this is there was an oil spill, a re-org, policy changes, staff attrition, re-staffing delay, crisis of workload and staffing. And so then Bob being ill-equipped for this circumstance and then scapegoating me and James Webb, and all this culminating in the shenanigans that put me here today. It's why Bob did what he did? I don't know. Why me? I don't know, but it's been a horrible five years.

(Rec. doc. 28-6 at pp. 30-31).

This is hardly "substantial evidence of pretext." *Auguster*, 249 F.3d at 402–03. At the hearing on the motion, counsel did not fare much better, citing the timing of the

17

reassignment and the fact that other individuals in supervisory capacities (but not in the Plans Section) were not similarly reassigned: "... this doesn't make sense. Why her? And they have yet to offer a reason for that." (Rec. doc. 52 at p. 17). A rhetorical question and a statement that is not true – "they have yet to offer a reason" – are grossly insufficient to meet Plaintiff's burden of demonstrating pretext.

Accordingly, for all the reasons set forth above, Plaintiff's claims for gender and age discrimination must be dismissed.

2.     *Plaintiff's Non-retaliatory Hostile Work Environment Claim*

As noted, Title VII prohibits discrimination "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. §2000e–2(a)(1). "'The creation of a hostile work environment through harassment . . . is a form of proscribed discrimination.'" *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (quoting *Vance v. Ball State Univ.*, ___ U.S. ___, ___, 133 S.Ct. 2434, 2455 (2013)). A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 2074 (2002)(internal quotations and citations omitted). The conduct "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998).

To determine whether the conduct is objectively offensive, the Court examines the totality of the circumstances. *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005).

Relevant factors include "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.*

Title VII is not a "general civility code." *Faragher*, 524 U.S. at 788, 118 S.Ct. at 2283-84. The conduct complained of must be "extreme to amount to a change in the terms and conditions of employment." *Id.* For example, the Fifth Circuit has held that a supervisor yelling at an employee, giving her sharp looks, and calling her a "liar" and a "disloyal employee" in front of her co-workers did not constitute a hostile work environment. *Ramsey v. Henderson*, 286 F.3d 264, 266–69 (5th Cir. 2002). Similarly, a two hour "harangue," a mocking comment, and a statement that the employee was "like a needy old girlfriend" did not constitute a hostile work environment. *Septimus*, 399 F.3d at 612.

In support of her hostile-work-environment claim, Plaintiff cites the very same conduct and employment actions complained of in support of her discrimination claims. These include allegations that her employer failed to hire sufficient staff, withheld QSIs and promotions from her staff, changed her seating assignments, marked her AWOL (which was later rescinded), and made demoralizing remarks and shouted at Plaintiff during a meeting. (Rec. doc. 1). The Court has thoroughly reviewed the entire record and, even when taken in totality with her reassignment claim, it simply cannot be said that this conduct is objectively offensive under the totality of the circumstances. *Septimus*, 399 F.3d at 611. In sum, with the possible exception of her reassignment (as discussed above), the issues raised by Plaintiff fail as a matter of law to create a hostile work environment because they were not frequent, severe, physically threatening, humiliating, and they did not "interfere[ ] with [the] employee's work performance." *See Septimus*, 399 F.3d at 611.

As to the Plaintiff's reassignment claim, just as with the discrimination claim, it is subject to the *McDonnell Douglas* three-stage burden-shifting framework.   And for the reasons set forth above, Plaintiff cannot establish a prima facie case as to that claim because it does not amount to an adverse employment action under Fifth Circuit precedent and, even if it did, she has not come forward with proof that her employer's legitimate, non-discriminatory explanation for her transfer.

Accordingly, Plaintiff's non-retaliatory hostile-work-environment claim should be dismissed.

### 3. *Plaintiff's Retaliation Claim*

Plaintiff also claims that she was retaliated against because she sought EEOC counseling in December 2012 and lodged a complaint with the EEOC in May 2013.   When a plaintiff supports a retaliation claim with circumstantial evidence, as is the case here, that claim is subject to a modified version of the *McDonnel Douglas* analysis.   *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).   First, the plaintiff must establish a prima facie case of retaliation.   *Id.*   Second, if the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-retaliatory reason for the employment action at issue.   *Id.*   Third, assuming that the defendant meets this burden, the plaintiff must show that the defendant's legitimate, non-retaliatory reason(s) were pretext for the actual retaliatory reason.   *Id.*

To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action.   *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009); *Aryain v.*

*Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).  Summary judgment is appropriate if the plaintiff cannot support all three elements.  *Id.*; *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 769 (5th Cir. 2001).

The Court assumes for present purposes that Plaintiff participated in a protected activity by filing an EEOC complaint in May 2013.

While the retaliation framework prohibits a greater scope of adverse acts "to ensure employees are not discouraged from efforts to secure or advance enforcement of the Act's basic guarantees," the proscribed acts must nonetheless be "materially adverse," such that they would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68, 126 S.Ct. at 2415.  The purpose of this objective standard is "to separate significant from trivial harms" and to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.*  Even when an adverse action is intended by the employer as retaliation, it must still satisfy this materiality standard. *Id.* at 67–68, 126 S.Ct. at 2414 (explaining that Title VII's anti-retaliation provision "protects an individual from not all retaliation").

As with her discrimination claims, Plaintiff has merged all of her allegedly adverse employment experiences that also form the basis of her discrimination and hostile-work-environment claims into her retaliation claim, essentially arguing that everything discriminatory that happened after she made her EEOC claim is also retaliatory and actionable as such.

Having considered every adverse action of which Plaintiff complains in the context of the retaliation framework and its broader protections, the Court cannot find that any of those

actions, including the reassignment claim, are "materially adverse," such that they would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern,* 548 U.S. at 68, 126 S.Ct. at 2415.   In fact, when Plaintiff's workplace experiences in this case are compared to those in other cases that were objectively more abusive but were nonetheless found not to be materially adverse, it is not even a particularly close call.  *See, e.g., Stewart*, 586 F.3d at 331 (being "chastised by superiors and ostracized by co-workers ... do not rise to the level of material adversity" needed to establish a retaliation claim); *Septimus*, 399 F.3d at 612 (a two hour "harangue," a mocking comment, and a statement that the employee was "like a needy old girlfriend" did not constitute a hostile work environment); *Ramsey*, 286 F.3d at 266–67 (yelling at an employee, giving her sharp looks, and calling her a "liar" and a "disloyal employee" in front of her co-workers did not constitute a hostile work environment); *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir.), *cert. denied*, 528 U.S. 963, 120 S.Ct. 395 (1999)(sexual teasing and some touching over a period of two years was "not severe" enough to constitute material adversity); *see also Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009)(stating that intimidating an employee by staring and yelling at him was not enough for a retaliation claim)*.  In sum, the conduct complained of by Plaintiff in this case is simply "not the kind of conduct that would interfere unreasonably with a reasonable person's work performance or destroy her opportunity to succeed in the workplace."  *Stewart*, 586 F.3d at 331.

Even were this not the case, the Plaintiff cannot, on this record, establish the causation element of her prima facie case.  Under Title VII, retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in §2000e–2(m).  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, __ U.S. __, __, 133 S. Ct. 2517, 2533

(2013).  "The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under §2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  *Id.* at ___, 133 S.Ct. at 2534.  This the Plaintiff cannot do.

Truly, the only arguable causal link to be found in this record is temporal; in the absence of any other objective evidence of retaliatory animus, the mere fact that the complained-of employment actions took place after Plaintiff's EEOC complaint (even shortly after), cannot, on this record, establish but-for causation as required by the statute.[11]

For the reasons set forth above, the Plaintiff here cannot establish a prima facie case of retaliation.  And for the reasons stated earlier, even if she could, her claim would be doomed by her failure to establish, under the *McDonnel Douglas* burden-shifting framework, that the employer's legitimate, non-discriminatory justifications for its actions were pretext. *See infra*, pp. 16-18.

For the foregoing reasons, Plaintiff's retaliation claim should be dismissed.

## III.    CONCLUSION

In sum, none of Plaintiff's claims can survive the Government's motion for summary judgment.  The discrimination, hostile work environment and retaliation claims all fail because she cannot establish a prima facie case or show pretext.  Defendant is therefore entitled to summary judgment as a matter of law.  Accordingly, the Government's motion for

---

[11]  And even though Plaintiff's reassignment occurred relatively soon after her EEOC complaint, the idea that it demonstrates but-for causation is seriously undermined by Plaintiff's failure to point the Court to any evidence establishing that the supervisor that reassigned her actually knew she had made the EEOC complaint before reassigning her and taking away her supervisory duties.

summary judgment (rec. doc. 28) is **GRANTED** and Plaintiff's case is dismissed with prejudice.  Judgment will be entered accordingly.

New Orleans, Louisiana, this __11th__ day of _____October_____, 2016.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE